# 3569 151
(W 6-29-09)

This instrument was prepared by ARVEST BANK OPERATIONS, INC., P. O. BOX 1670, LOWELL, Arkansas 72745-1670

Brenda DeShields-Circuit Clerk
Benton County, AR
Book/Pg: 2007/146667
Term/Cashier: CASH4/BSTUBBS
06/25/2007    1:51:39PM
Tran:      5804
Total Fees: $38.00

Book 2007 Page 146667
Recorded in the Above
MORTGAGE  Book & Page
06/25/2007

When recorded return to ARVEST BANK, P O BOX 130, SILOAM SPRINGS, Arkansas 72761

---

Space Above This Line For Recording Data

## MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is JUNE 12, 2007. The parties and their addresses are:

**MORTGAGOR/GRANTOR:**
 NAHAR SINGH DHESA
 An unmarried individual
 5338 STATION RD
 SURREY, BC

 BHINDER MUNDI
 An unmarried individual
 5338 STATION RD
 SURREY, BC

 HARMINDER K DHALIWAL
 A/K/A HARMINDER KAUR DHALIWAL
 An unmarried individual
 915 S 8TH ST
 ROGERS, Arkansas 72756

 HARKOMAL KAUR DHALIWAL
 An unmarried individual
 1394 W SUNSET AVE
 SPRINGDALE, Arkansas 72764

 AMRIT PAL KAUR
 An unmarried individual
 1300 HIGHWAY 412 W
 SILOAM SPRINGS, Arkansas 72761

Exhibit "D"

---

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y                    ©1996 Bankers Systems, Inc., St. Cloud, MN  ExGereld    Initials _____    Page 1

Book 2007 Page 146668
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

**LENDER/GRANTEE:**
ARVEST BANK
Organized and existing under the laws of Arkansas
P. O. Box 130
Siloam Springs, Arkansas 72761

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender, the following described property:

SEE EXHIBIT A

The property is located in BENTON County at 915 S 8TH ST, ROGERS, Arkansas 72756.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established. This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $200,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. 

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

A. **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 3569157, dated June 12, 2007, from P.P.A. HOTELS, LLC (Borrower) to Lender, with a loan amount of $200,000.00 and maturing on June 15, 2010.

B. **All Debts.** All present and future debts from P.P.A. HOTELS, LLC to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for



P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y    ©1996 Bankers Systems, Inc., St. Cloud, MN  Experts    Initials
Page

Book 2007 Page 146669
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities.

C. **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y    ©1996 Bankers Systems, Inc., St. Cloud, MN    Initials _____    Page 3

Book 2007 Page 146670
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. DEFAULT.** Mortgagor will be in default if any of the following occur:

  **A. Payments.** Mortgagor or Borrower fail to make a payment in full when due.

  **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

  **C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

  **D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

  **E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

  **F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

  **G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

  **H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

  **I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

  **J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

  **K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

  **L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y ©1996 Bankers Systems, Inc., St. Cloud, MN Experts Initials Page 4

Book 2007 Page 146671
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

M. **Insecurity.** Lender determines in good faith that a material adverse change has occurred in Borrower's financial condition from the conditions set forth in Borrower's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**13. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, reasonable attorneys' fees (as determined under Ark. Code Ann. §16-22-308), court costs, and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of the payment until paid in full at the same interest rate in effect as provided in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y ©1996 Bankers Systems, Inc., St. Cloud, MN *Experts* Initials Page 5

Book 2007 Page 146672
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023080707Y    ©1996 Bankers Systems, Inc., St. Cloud, MN    Initials

Book 2007 Page 146673
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**16. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**17. INSURANCE.** Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause." If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**18. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**19. CO-SIGNERS.** If Mortgagor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y ©1996 Bankers Systems, Inc., St. Cloud, MN Experã" Initials 
Page 7
NS

Book 2007 Page 146674
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

**20. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement, sale, redemption and homestead exemption rights relating to the Property under the laws of the State of Arkansas, especially under § 18-49-106. To the extent applicable, Mortgagor relinquishes all rights of curtesy and dower in the Property.

**21. APPLICABLE LAW.** This Security Instrument is governed by the laws of Arkansas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**22. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**23. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**24. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**25. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y              ©1996 Bankers Systems, Inc., St. Cloud, MN  ExpereT       Initials _____ Page 8

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

_____
NAHAR SINGH DHESA
Individually

_____
BHINDER MUNDI
Individually

_____
HARMINDER K DHALIWAL
Individually

_____
HARKOMAL KAUR DHALIWAL
Individually

_____
AMRIT PAL KAUR
Individually

Book 2007 Page 146675
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

ACKNOWLEDGMENT.
(Individual)
County OF Benton, State OF Arkansas ss.
On this 21st day of June, 2007, before me, the undersigned officer, personally appeared NAHAR SINGH DHESA , an unmarried individual, BHINDER MUNDI , an unmarried individual, HARMINDER K DHALIWAL , an unmarried individual, HARKOMAL KAUR DHALIWAL , an unmarried individual, and AMRIT PAL KAUR , an unmarried individual, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes and consideration therein contained.

My commission expires:
4-4-2016

(Notary Public)

Book 2007 Page 146676
Recorded in the Above
MORTGAGE Book & Page
06/25/2007

P.P.A. HOTELS, LLC
Arkansas Mortgage
AR/4MCFREEMA00005900005586023060707Y
©1996 Bankers Systems, Inc., St. Cloud, MN *Experil*
Initials ___
Page 10

Escrow File No.: 0601170

## EXHIBIT "A"

Part of Block 1 of Hailey and Fleeman Addition to the City of Rogers, also being Part of the NW1/4 of the NE1/4 of Section 13, Township 19 North, Range 30 West, Benton County, Arkansas, being more particularly described as follows:
Commencing at the Northwest corner of the NW1/4 of the NE1/4; thence South 86°33'10" East 459.90 feet to the West right of way line of South 7th Street; thence along said right of way line South 02°29'50" West 315.94 feet to a set rebar and the Point of Beginning; thence continue along said right of way line South 02°29'50" West 282.92 feet to an existing rebar; thence leaving said right of way line, North 86°2616" West 416.90 feet to an existing rebar on the East right of way line of Highway 71; thence along said right of way line the following bearings and distances: North 04°43'23" East 217.82 feet to a set nail, North 05°36'51" East 67.60 feet to a set rebar; thence leaving said right of way line South 86°05'23" East 404.82 feet to the Point of Beginning, containing 2.68 acres and subject to any easements of record.

Book 2007 Page 146677
Recorded in the Above
MORTGAGE Book & Page
06/25/2007
Benton County, AR
I certify this instrument was filed on
06/25/2007  1:52:24PM
and recorded in MORTGAGE Book
2007 at pages 0146667 - 0146677
Brenda DeShields-Circuit Clerk